# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| GREGORY CHAMPION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07 C 7267 |
| | ) | |
| v. | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| THOMAS J. DART, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gregory Champion filed this *pro se* action against Defendants, Cook County Officials Sheriff Thomas Dart, Executive Director Salvador Godinez, Superintendent Andrews, and Correctional Officers King and Parks, alleging a violation of his constitutional rights following an assault on Plaintiff by another inmate at Cook County Jail. Defendants seek summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies and that his claims lack merit. For the reasons stated in this order, the motion for summary judgment is granted.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." FED R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). All of the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[M]ere disagreement with the movant's asserted facts is inadequate" to defeat summary judgment; at this stage, the plaintiff must do more than simply rest on his complaint. *Montano v. City of Chicago*, 535 F.3d 558, 569 (7th Cir. 2008), quoting *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003); *see also Behrens v. Pelletier*, 516 U.S. 299, 309 (1996). Instead, the party that bears

the burden of proof on an issue must affirmatively demonstrate, by specific factual allegations, that a genuine issue of material fact exists that requires a trial.

## **FACTS**

On December 4, 2007, Plaintiff was a pretrial detainee at Cook County Jail. (Def.s' 56.1(a)(3) Statement ¶ 1.) On that day, Plaintiff was on his bunk, reading, when he attempted to give instructions to another inmate who was attempting to use the television remote control. (*Id.* ¶ 2; Gurley Deposition, Exhibit A to Def.'s 56.1 (a)(3) Statement, at 17.) Floyd King, another pretrial detainee, replied to Plaintiff, "Be quiet, you have no voice in nothing." (*Id.* ¶ 3.) Plaintiff responded, "Don't tell me to be quiet, like I'm some little kid. I'm older than you." (*Id.* ¶ 4.) Floyd King approached Plaintiff's bunk and said, "Motherfucker, if I tell you to shut up, that's what I mean." (*Id.* ¶ 5.) As Floyd King came closer to Plaintiff, Plaintiff said, "I'm not a motherfucker." (*Id.* ¶ 6.) Floyd King came up to Plaintiff and "out of nowhere" hit Plaintiff in the face with his left hand. Plaintiff "didn't even see it coming." (*Id.* ¶¶ 7-8.)

At the time Floyd King struck Plaintiff, there were no correctional officers in the tier. (Def.'s 56.1(a)(3) Statement ¶ 8.) Correctional Officers King and Parks were in the tier vestibule. (*Id.* ¶ 12.) Plaintiff ran to the door of the dorm and banged on the door. (*Id.* ¶ 9.) After speaking to Plaintiff, Officer King immediately allowed him to leave the tier, placed him on a bench outside of the dorm, and told him not to return to the tier. (*Id.* ¶¶ 11, 28.) Officer King then told Floyd King to pack his stuff and took him out of the tier. (*Id.* ¶¶ 30-31.) Plaintiff was taken to the dispensary for medical treatment. (*Id.* ¶ 14.) Floyd King received a written disciplinary citation for striking Plaintiff. (*Id.* ¶ 19.)

Division 2, where Plaintiff and Floyd King were housed, is a living unit for detainees who have been classified at intake and through regular classification review intervals as being medium or minimum security risks. (Def.'s 56.1(a)(3) Statement ¶ 22.) Plaintiff and Floyd King are classified as minimum security risk detainees. (*Id.* ¶¶ 23-25.) It is undisputed that Floyd King had

2

never threatened to hit Plaintiff. (*Id.* ¶ 15.) The blow was a "sucker punch" that came without any warning; indeed, Plaintiff himself had "absolutely no idea" that Floyd King might punch him as he approached the dorm. (*Id.* ¶¶ 16, 17.)

Plaintiff never made Officers King or Parks or Director Godinez or Superintendent Andrews aware that Floyd King had ever threatened him. (Def.'s 56.1(a)(3) Statement ¶ 18.) Plaintiff asserts that when Floyd King was assigned to his tier, Plaintiff wrote a letter to Superintendent Andrews to inform him that Floyd King was a gang leader. (*Id.* ¶ 20.) Superintendent Andrews never received the letter, however, and Plaintiff himself does not have a copy of it. (*Id.* ¶¶ 21, 26.) Superintendent Andrews had no knowledge of a specific threat to Plaintiff's safety by Floyd King prior to the incident. (*Id.* ¶ 27; Plaintiff's Response ¶ 27.) Nor did Officer King have any prior knowledge that Floyd King might pose a danger to Plaintiff's safety. (Def.'s 56.1(a)(3) Statement ¶ 31.) Officer King did not see Floyd King punch Plaintiff. (*Id.* ¶ 32.)

Plaintiff was familiar with the detainee grievance procedure at Cook County Jail. (Def.'s 56.1(a)(3) Statement ¶ 33.) Plaintiff had filed several grievances regarding other complaints he had regarding the jail. (*Id.* ¶ 34.) Plaintiff never wrote any grievance or made any complaints to jail officials about any of the Defendants' conduct during the incident with Floyd King. (*Id.* ¶ 35.) The first time that Plaintiff made a written complaint against the Defendants failing to protect him was this lawsuit. (*Id.* ¶ 36.)

## DISCUSSION

Defendants argue that Plaintiff failed to exhaust his administrative remedies and that his claim fails on the merits. The court addresses both arguments below.

**Exhaustion**

The Prison Litigation Reform Act of 1996 contains a comprehensive administrative exhaustion requirement. Under that statute, "[n]o action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted."

3

42 U.S.C. § 1997e(a). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim." *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999).

An inmate must take all the steps required by the prison or jail's grievance system in order to exhaust his administrative remedies properly. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004); *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002). Exhaustion is a precondition to filing suit, so that an inmate's attempt to exhaust available administrative remedies in the midst of litigation is insufficient. *Ford,* 362 F.3d at 398; *Perez v. Wisconsin Dep't of Corrections*, 182 F.3d 532, 536-37 (7th Cir. 1999). The purpose of the exhaustion requirement is to give corrections officials the opportunity to address complaints internally before the filing of a federal lawsuit. *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). Failure to exhaust administrative remedies is an affirmative defense; correctional officials have the burden of proving that the inmate had available remedies that he did not utilize. *See, e.g., Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004).

Plaintiff concedes that he did not file any grievances as to the incident with Floyd King prior to filing this lawsuit. The fact that, as Plaintiff notes, the incident had already occurred, does not excuse the exhaustion requirement, which is binding even where the prisoner believes the process is deficient and regardless of the relief he seeks. *See Perez*, 182 F.3d at 538. Defendants have demonstrated that Plaintiff has not exhausted his administrative claims and that Defendants are entitled to summary judgment on this ground.

**Lack of Personal Involvement**

Even if Plaintiff had exhausted his administrative remedies, he could prevail on his Section 1983 claim against Jenkins, Sergeant Morris, and Lieutenant Mercado in their individual capacities, only if Plaintiff could demonstrate that these Defendants were personally involved in the alleged constitutional violation. *See Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). Liability

4

against these Defendants cannot rest on the fact that they played supervisory roles on the date of the incident. *See Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002) (a supervisory official cannot be held liable for the conduct of his subordinates based upon a theory of *respondeat superior*, and a complaint's allegations must indicate that the supervisory official was somehow personally involved in the constitutional deprivation).

As a pretrial detainee, Plaintiff's claim that Defendants failed to protect him from harm is analyzed under the Due Process Clause of the Fourteenth Amendment. *See Grieveson v. Anderson*, 538 F.3d 763, 771-72 (7th Cir. 2008). Prison/jail officials do have a duty to protect prisoners from violence by other inmates. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Grieveson*, 538 F.3d at 775; *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). To succeed on a claim based on a prison official's failure to protect an inmate, howver, a plaintiff must demonstrate that the prison official was deliberately indifferent to the fact that the plaintiff was in serious risk of being harmed. *See Grieveson*, 538 F.3d at 775; *Pinkston*, 440 F.3d at 889. Conduct by the prison official that is simply negligent or inadvertent is not sufficient. Instead, the prison official must have subjective knowledge of a substantial risk of serious harm and must fail to take reasonable measures to prevent that harm from occurring. *See Grieveson*, 538 F.3d at 775; *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999). Thus, in order to prevail here, Plaintiff would have to present evidence that Defendants knew of a substantial risk of serious harm to Plaintiff and failed to take reasonable measures to prevent that harm from occurring. *See Pinkston*, 440 F.3d at 889.

It is undisputed that none of the Defendants were on the tier at the time that Floyd King assaulted Plaintiff. Nor were the Defendants involved in any manner in any of the events that resulted in the incident. Furthermore, Plaintiff has not demonstrated that any of the Defendants knew of a substantial risk of serious harm to Plaintiff by Floyd King. Plaintiff himself describes the incident as coming without notice and acknowledges that he had "absolutely no idea" that Floyd King was going to punch him. Plaintiff never informed any of the Defendants that Floyd King had

threatened him, and the Defendants were not aware of any threats made by Floyd King against Plaintiff. Plaintiff relies on his letter to Superintendent Andrews as evidence that Superintendent Andrews knew of a risk to Plaintiff's safety, but he does not challenge the Superintendent's assertion that he did not receive the letter. And, even if Superintendent Andrews had received the letter, it would not have put him on notice that Floyd King had threatened Plaintiff in any manner; instead, the letter merely informed Superintendent Andrews that Floyd King is a gang leader. Plaintiff provides no evidence that any of the Defendants knew that Floyd King posed a substantial risk to Plaintiff's safety. Based on the undisputed summary judgment evidence, no reasonable jury could find that the Defendants acted with deliberate indifference to Plaintiff's safety.

Finally, Plaintiff alleges that Sheriff Dart, Director Godinez, and Superintendent Andrews failed to properly train or supervise the correctional officers and violated his equal protection rights because Plaintiff was not permitted to file battery charges against Floyd King and did not participate in Floyd King's disciplinary proceedings. The decision whether to bring charges against an individual lies with the State's Attorney, however, not with jail administrators. *See Spiegel v. Rabinovitz*, 121 F.3d 251, 257 (7th Cir. 1997); *People ex rel. Daley v. Moran*, 94 Ill. 2d 41, 45, 445 N.E.2d 270, 272 (1983). Nor does Plaintiff have a constitutional right to participate in Floyd King's disciplinary proceedings. *See generally Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974) (setting forth *accused's* rights in a prison disciplinary hearing). Thus, these allegations are without merit.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted.

ENTER:

Dated: July 6, 2009

_____
REBECCA R. PALLMEYER
United States District Judge